Filed 7/22/25  In re Ze.D. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re Ze.D. et al., Persons Coming Under the Juvenile Court Law. | B338890 <br><br> (Los Angeles County Super. Ct. No. 19CCJP02270B–E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> Jessica G., <br><br> Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Juvenile Court Referee. Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Bryan Mercke, Deputy County Counsel, for Plaintiff and Respondent.

————————————————

Jessica G. (mother) appeals from an order removing her children Ze.D., Zi.D., Layla Q., and Mia Q., from her custody and control. Mother's sole argument on appeal is that the juvenile court erred in finding it had no reason to believe the children are or may be Indian children within the meaning of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1900 et seq.). Mother and the children's fathers denied having any Indian ancestry, as did the children's maternal and paternal grandmothers. Mother contends the Los Angeles County Department of Children and Family Services (DCFS) failed to conduct an adequate inquiry to determine whether the children are or may be Indian children. We find no error and affirm the trial court order.

**FACTUAL AND PROCEDURAL BACKGROUND**

The family came to the attention of DCFS in December 2022, due to reports that mother and Jose Q. (the Q. father) were abusing drugs. The Q. father is the father of Layla and Mia. Hugo D. (the D. father) is the father of Ze.D. and Zi.D. Although the juvenile court initially removed Layla and Mia from the Q. father and allowed all four children to remain in mother's custody, in December 2023, the juvenile court sustained subsequent petitions alleging that domestic violence between mother and the Q. father, and mother's substance abuse, placed the children at substantial risk of harm. At a June 2024 disposition hearing, the juvenile court removed the children from the parents. Mother timely appealed.

At the parents' first respective appearances in court, they each submitted Parental Notification of Indian Status ICWA-020 forms denying that they or their children are or may be members of any federally recognized Indian tribe, and they denied any other potential indicia of tribal membership.[1] In September 2023, DCFS interviewed the maternal grandmother about ICWA. She responded: "No we are Mexican and German." In October 2023, Ze.D. and Zi.D.'s paternal grandmother told DCFS her family is from Mexico and denied that Ze.D. and Zi.D. had any Indian ancestry, stating, "No, only Mexico." That same month, the paternal grandmother of Layla and Mia also denied that the children had any Indian ancestry. She told DCFS that there were no other relatives to ask about ICWA.

In February 2023, the juvenile court found it had no reason to know the children are Indian children. The court made additional no ICWA findings in March 2023 and November 2023.

---

[1] The D. father completed a version of the form which permitted him to check boxes indicating he or the children are or may be members of or eligible for membership in a federally recognized Indian tribe; he or the children may have Indian ancestry; one or more of his lineal ancestors is or was a member of a federally recognized Indian tribe; or that he has no Indian ancestry as far as he knows. The D. father checked the box indicating he has no Indian ancestry as far as he knows. Mother and the Q. father completed versions of the form which permitted them to check boxes if they, the children, or any lineal ancestor is or was a member of a federally recognized tribe; they or the children are residents of or are domiciled on a reservation or other tribal land; the children are or were wards of a tribal court; they or the children possess an Indian identification card; or "none of the above apply." Both parents checked the box stating "none of the above apply."

# DISCUSSION

## I.    Duty of Inquiry

"[Welfare and Institutions Code] [s]ection 224.2 codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child."[2] (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1131, fn. omitted (*Dezi C.*).) An Indian child is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, former subd. (a) [adopting federal definition].)[3]

Section 224.2, subdivision (a), provides that both the juvenile court and child welfare agency have an "affirmative and continuing duty" to inquire whether a child is or may be an Indian child. Under section 224.2, subdivision (b), when first contacted regarding a child, and if a child is placed in the agency's temporary custody, the agency must inquire whether the child is or may be an Indian child by asking a nonexclusive group that includes the child, the parents, and extended family members.

Under section 224.2, subdivision (i)(2), if "the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child,

---

[2]    Section 224 et seq., is the California Indian Child Welfare Act. All further undesignated statutory references are to the Welfare and Institutions Code.

[3]    Section 224.1 was amended, effective September 27, 2024. (Stats. 2024, ch. 656, § 2.) We refer to the definitions in effect during the proceedings at issue.

4

the court may make a finding that [ICWA] . . . does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."

In *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005 (*Ezequiel G.*), disapproved on another ground by *Dezi C.*, a panel of this court concluded that a juvenile court's finding that there is no reason to know a child is an Indian child is reviewed for substantial evidence. However, the determination of whether the child welfare agency has engaged in a "proper and adequate further inquiry and due diligence as required" under section 224.2 is reviewed for an abuse of discretion. (§ 224.2, subd. (i)(2).) While it did not prescribe the proper standard of review, the *Dezi C.* court noted "that the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [quoting *Ezequiel G.*] subject to a deferential standard of review." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

## II. The Juvenile Court Did Not Err in Finding ICWA Does Not Apply

As we understand her argument, mother contends the juvenile court's finding that ICWA does not apply to the proceedings was erroneous because DCFS failed to conduct a sufficient inquiry of available extended family members. In other words, the juvenile court erred in making an implicit finding that DCFS's inquiry was adequate, proper, and duly diligent. We disagree.[4]

---

[4]     The juvenile court made an initial no ICWA finding in February 2023, before DCFS reported it had interviewed extended family members. Thus, at that time, the court arguably

5

Under section 224.2, subdivision (b), a child welfare agency must ask extended family members whether a child placed in the agency's custody is or may be an Indian child. However, the agency is not necessarily required to interview every possible relative. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140 [reversal not required where "every possible extended family member has not been asked about the child's Indian ancestry"].) Instead, the juvenile court must determine whether the agency has sufficiently inquired of extended family members to reliably ascertain whether the child is or may be an Indian child. When reviewing that determination, we employ a deferential standard of review. Our focus is not "on the number of individuals interviewed, but on whether the agency's ICWA inquiry has yielded reliable information about a child's possible tribal affiliation." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1009.)

Here, DCFS asked the maternal grandmother if the children are or may be Indian children. She denied Indian ancestry, informing DCFS that mother's family is Mexican and German. The juvenile court could accept this as a reliable indication that the children are not Indian children by virtue of

---

lacked sufficient evidence to determine ICWA did not apply or to conclude that DCFS had exercised due diligence in carrying out its initial duty of inquiry under section 224.2. However, consistent with the court and DCFS's ongoing duty of inquiry, the agency conducted further interviews of family members as the case continued and provided the court with the results of those inquiries. The court made further no ICWA findings in March and November 2023. We therefore conclude that by the time of the order mother has challenged on appeal, the juvenile court could reasonably determine DCFS's ICWA inquiry was adequate and the court's earlier findings remained appropriate.

6

mother's lineage.  DCFS also asked the two paternal grandmothers about ICWA.  Both denied Indian ancestry.  The D. paternal grandmother indicated the family's heritage was from Mexico only.  The Q. paternal grandmother was less specific, but she denied Indian ancestry, and further denied that there were any other relatives who might have relevant information.

Nothing in the record suggests these grandparents were unreliable sources of information about mother's or the respective fathers' lineage, ancestry, or membership in a federally recognized Indian tribe.  Mother contends DCFS was required to interview a maternal aunt with whom Ze.D. was living, and other Q. relatives who were interested in serving as potential visitation monitors.  However, the report indicating Q. paternal relatives were to be considered as potential monitors specifically identified only one relative—a Q. paternal aunt—and did not reveal whether the other relatives were "extended family members" within the meaning of section 224.1, former subdivision (c).  The information before the court did not suggest that father's sister was likely to have more or different information about the children's actual or potential membership in an Indian tribe than her own mother, the Q. paternal grandmother.

Similarly, while DCFS was in contact with a maternal aunt, mother and the maternal grandmother had also already denied Indian ancestry, with the maternal grandmother specifically identifying her children's ancestry.  The juvenile court could reasonably conclude there was no need to "duplicate inquiry efforts" by asking additional maternal and Q. paternal aunts about ICWA when persons safely presumed to have reliable information—the maternal and Q. paternal grandmother—had already been interviewed and denied any

7

Indian ancestry.  (*In re C.R.* (June 12, 2025, B341335, B341338) ___ Cal.App.5th ___ [2025 WL 1833083, p. *5].)

Mother additionally argues the DCFS inquiry was inadequate because the agency did not ask the maternal grandmother or the D. paternal grandmother whether there were other relatives DCFS might interview about whether the children are Indian children.

As an initial matter, it is not clear that the record supports mother's assertion that the question was not asked.  The DCFS reports do not expressly state that a social worker asked the maternal grandmother or D. paternal grandmother about other relatives.  Yet, they do indicate that a social worker asked the Q. paternal grandmother this question, suggesting that it was among the questions generally comprising the social worker's ICWA inquiry.  Moreover, we typically presume that an official duty has been regularly performed (Evid. Code, § 664; see *In re S.B.* (2009) 174 Cal.App.4th 808, 812–813).

Further, while it is necessary for DCFS to create an adequate record of the ICWA inquiry it has performed and provide detailed descriptions, we are aware of no statute, court rule, or case law that requires the child welfare agency to document every single question it asks as part of the ICWA inquiry.  (See, e.g., Cal. Rules of Court, rule 5.481(a)(5) ["The petitioner must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status . . . ."]; *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101–1102 [the less developed the record, the more limited the court's discretion to determine the agency's inquiry was proper, adequate, and duly diligent].)

But even if we assume DCFS did not ask the maternal grandmother and D. paternal grandmother to identify other relatives, we still conclude the juvenile court could reasonably determine that doing so was unnecessary. Mother and the D. father were not uncertain about whether they or the children were members of or eligible for membership in an Indian tribe. They had no knowledge or belief that they or the children are Indian. Similarly, the maternal grandmother and the D. paternal grandmother were both unequivocal and specific about the children's backgrounds—Mexican and German, according to the maternal grandmother, and "only Mexico," according to the D. paternal grandmother. A child welfare agency is "not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053.)

Indeed, even where there has been some indication that a child may be an Indian child, courts have found an agency's inquiry sufficient without interviews of every possible relative. For example, in *In re E.W.* (2023) 91 Cal.App.5th 314, the mother initially informed the agency that the maternal grandmother had some Native American ancestry, but she later repeatedly denied any such heritage. (*Id.* at p. 322.) The father denied any Native American ancestry. The agency interviewed a maternal aunt and the paternal grandmother, both of whom denied either family had Native American ancestry. The agency did not interview other available relatives. (*Id.* at pp. 323–324.) The appellate court found substantial evidence supported the juvenile court's finding of adequate inquiry and that ICWA did not apply. The court explained the interviews conducted " 'reliably answered' the question of whether the children were Native American children"

9

and the parents did not "explain how not interviewing additional relatives . . . casts any doubt on the reliability of the answers already obtained from the parents and relatives." (*Id.* at p. 323; cf. *In re J.S.* (2021) 62 Cal.App.5th 678, 689–690 [father indicated he may have Indian ancestry and source of information was his mother; agency's interview with paternal grandmother was adequate inquiry].) The same reasoning applies here.

The juvenile court could reasonably conclude the maternal and paternal grandmothers were reliable sources of information about the children's potential or actual membership in an Indian tribe. The information obtained from the parents and the grandmothers was sufficient to allow the juvenile court to conclude ICWA did not apply and that DCFS conducted an adequate and diligent inquiry.

## DISPOSITION

The juvenile court order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

HANASONO, J.